IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY SMITH, | ) | CASE NO. 1:11-CV-2788 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Jeffrey Smith's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the undersigned AFFIRMS the decision of the Commissioner.

I. PROCEDURAL HISTORY

On November 16, 2009, Plaintiff Jeffrey Smith ("Smith" or "Plaintiff") applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits. (Tr. 139-49). Smith alleged he became disabled on March 5, 2004, (Tr. 139, 144), due to suffering from constant pain, difficulty sitting, standing and bending, and reduced motion in his left shoulder. (Tr. 169). The Social Security Administration denied Plaintiff's applications for benefits initially and upon reconsideration. (Tr. 53-56, 61-74, 77-90). Thereafter, Smith

requested a hearing before an administrative law judge to contest the denial of his applications. (Tr. 91-92). The administration granted Plaintiff's request and scheduled a hearing. (Tr. 97-102).

On August 26, 2011, Administrative Law Judge Kendra Kleber (the "ALJ") convened a hearing in Cleveland, Ohio, to evaluate Plaintiff's applications. (Tr. 24-52). Plaintiff appeared with counsel and testified before the ALJ. (*Id*.). Vocational expert, Deborah Lee, also appeared and testified at the hearing. (*Id*.). During the proceeding, Plaintiff moved to amend his disability onset date to January 26, 2010. (Tr. 28). In doing so, Plaintiff acknowledged that such an amendment would require him to withdraw his application for Disability Insurance benefits. (*Id*.).

On September 9, 2011, the ALJ issued an unfavorable decision finding Smith was not disabled. (Tr. 10-19). The ALJ applied the five-step sequential analysis,[1] and concluded

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional

Plaintiff retained the ability to perform work which existed in significant numbers in the national economy. (*Id*.). Following the issuance of the ALJ's decision, Plaintiff sought review of the ruling from the Appeals Council. (Tr. 6). However, the council denied Smith's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

II. PERSONAL BACKGROUND INFORMATION & PERTINENT MEDICAL HISTORY

Smith, born on May 7, 1958, was 53 years old on the date of his hearing before the ALJ. (*See* Tr. 53). Accordingly, Plaintiff was considered as a person "closely approaching advanced age" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d). Plaintiff has a 10th grade education, (Tr. 28, 175), and past experience working as a mixing machine operator, machine packager, spot welder and car wash attendant. (Tr. 45-47).

Plaintiff's impairments stem from a workplace injury suffered in September 2001 while bending and lifting materials. (Tr. 249). X-rays showed Smith suffered from degenerative disc disease of the lower thoracic and lumbar spine and moderate disc space narrowing at L4-5. (Tr. 245).

Between 2001 and 2008 Plaintiff continued to experience problems with pain. He presented to the emergency room in 2005 with complaints of right hip pain and was diagnosed with right sciatica. (Tr. 262, 265). Smith later presented to the emergency room in 2007 with complaints of low back pain. (Tr. 256). Doctors diagnosed him with exacerbation of a

---

capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

3

lumbosacral strain (chronic). (Tr. 259). Finally, in 2008, Smith had x-rays taken of his left shoulder. (Tr. 300). The x-rays revealed bony spurring on Plaintiff's humeral head. (*Id*.).

On January 26, 2010, Plaintiff presented to Dr. Naomi Waldbaum for a consultative examination. (Tr. 331-37). Smith told Dr. Waldbaum that he experienced severe pain in his right groin which spread to the middle of his back and at times to his left side. (Tr. 335). During her physical examination of Plaintiff, Dr. Waldbaum noted Plaintiff's gait was abnormal as he had a limp on the right side and walked with his right leg "turned out in external rotation". (Tr. 336). Smith also used a cane on the right side and put his total body weight on that leg. (*Id*.). In addition, Dr. Waldbaum stated that Plaintiff performed all maneuvers with much groaning, and that some of his movements were exaggerated. (*Id*.). Dr. Waldbaum also performed straight leg raising tests on Smith. The exam was normal for his left leg, but he experienced pain at 30 degrees on the right. (Tr. 337). Interestingly, Dr. Waldbaum did not indicate whether Plaintiff's muscle testing scores were reliable, but instead commented that Smith "ha[d] some exaggerated pain responses." (Tr. 331).

Overall, Dr. Waldbaum found Smith suffered from chronic pain in his right low back which radiated down to his right hip and leg. (*Id*.). However, she noted that it did not appear to her that Smith had undergone an EMG nerve conduction evaluation to establish whether he had sciatica. (*Id*.). Nor was she privy to any x-rays or MRIs suggesting whether Smith had any ongoing pathology. (*Id*.). Aside from this, Dr. Waldbaum found Plaintiff used his cane inappropriately, as he transferred all his weight to his right side and limped with his right leg. (*Id*.). Ultimately, the doctor opined Smith was unable to perform any work which required sitting, climbing or walking. (*Id*.). Dr. Waldbaum further noted that Plaintiff had a limited ability to use his left arm due to his shoulder impairment. (*Id*.). Lastly, she opined that "[w]ith

4

appropriate treatment and reduction in symptomatology, [Smith] should be able to perform some sedentary, light type work." (*Id.*).

On March 23, 2010, state agency physician, Dr. William Bolz, conducted a review of Smith's medical record to assess his physical residual functional capacity ("RFC"). (Tr. 339-46). Dr. Bolz opined Plaintiff was capable of lifting 20 pounds occasionally, 10 pounds frequently, and standing, walking or sitting for 6 hours each workday. (Tr. 340). But, Dr. Bolz indicated Plaintiff had a limited ability to perform pushing, pulling, and reaching overhead with his left arm, and should not perform jobs which required balancing or working around hazards. (Tr. 340-43). However, Dr. Bolz disagreed with Dr. Waldbaum's recommendation that Plaintiff refrain from any work which would involve standing, walking or climbing. (Tr. 345). Dr. Bolz highlighted that Plaintiff used his cane inappropriately during Dr. Waldbaum's exam and exaggerated his pain responses during testing. (*Id.*). He also opined that Smith's medical record did not support the restrictions announced by Dr. Waldbaum and concluded that her opinion was not entitled to great weight. (*Id.*).

In April 2010, Plaintiff received treatment from Dr. Juan Escandon in response to complaints of back pain. (Tr. 349-53). Dr. Escandon diagnosed Smith with "[d]egenerative changes involving the lower lumbar spine" but did not find evidence of compression or malalignment. (Tr. 352). Plaintiff's range of motion in his back was normal and Dr. Escandon encouraged Plaintiff to engage in exercises to improve the strength and flexibility in his back. (Tr. 350). The doctor also recommended Plaintiff to avoid long periods of sitting or standing, and advised him to move around and change positions as much as possible to manage his pain. (*Id.*).

5

Lastly, in June 2011, Plaintiff presented to Dr. Constance Magoulias with complaints of chronic back pain which radiated down to his left leg. (Tr. 356). Smith displayed a limited range of motion in his back and was prescribed physical therapy. (Tr. 358-59). Dr. Magoulias believed he likely suffered from degenerative joint disorder with radiculopathy. (Tr. 359). Plaintiff was administered an injection of pain medication and given muscle relaxers and nonsteroidal anti-inflammatory drugs ("NSAIDs"). (Tr. 356, 359). The physician noted she would consider prescribing Smith Neurontin if his symptoms worsened. (Tr. 359).

### III. ALJ's RULING

At the outset of the decision, the ALJ acknowledged Plaintiff's request to amend his disability onset date and to withdraw his application for benefits under Title II. (Tr. 10). However, the ALJ denied the motion, explaining that she reviewed all the medical records admitted into evidence at Smith's hearing, "[i]n order to properly and completely adjudicate the entire period before [her]". (*Id*.).

The ALJ made the following findings of fact and conclusions of law in applying the five-step sequential evaluation process. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his original onset date of March 5, 2004. (Tr. 12). At step two, the ALJ held Plaintiff suffered from two severe impairments: mild degenerative changes of the lumbar spine and degenerative changes of the left shoulder. (Tr. 12-13). But, at step three, the ALJ ruled that neither of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R Part 404, Subpart P, Appendix 1. (Tr. 13).

Before moving to the next step, the ALJ assessed Plaintiff's RFC to work. The ALJ ruled Smith retained the ability to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 14-17). For instance, the ALJ limited Plaintiff to only

6

frequent pushing, pulling or overhead reaching with his left arm, and precluded Plaintiff from any work involving climbing ladders or scaffolds. (Tr. 14). In light of Plaintiff's RFC, the ALJ held Plaintiff could return to his past work as a car wash attendant. (Tr. 18). Accordingly, the ALJ found Plaintiff was not entitled to benefits.

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.* Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in

7

dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff asserts two objections to the ALJ's decision. First, Plaintiff claims the ALJ did not properly evaluate his allegations of disabling pain. Second, Smith maintains substantial evidence does not support the ALJ's decision to assign little weight to opinion of Dr. Naomi Waldbaum. Neither of these objections warrants reversal of the ALJ's decision or remand.

### 1. Disabling Pain

The Social Security regulations recognize that a claimant's disability can be caused by the symptoms resulting from a claimant's impairments, rather than from the impairment itself. 20 C.F.R. §§ 416.929, 404.1529. However, *statements* made by the claimant regarding his pain will not alone establish an entitlement to benefits. 20 C.F.R. §§ 404.1529(a), 416.929(a). Instead, the Sixth Circuit has prescribed a two-pronged test to evaluate a claimant's subjective complaints of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Even if the ALJ concludes that the claimant's impairment could reasonably be expected to produce the alleged pain, the ALJ must still evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In evaluating the claimant's pain, the ALJ should consider the individual's daily activities, the location, duration, frequency and intensity of the symptoms, precipitating and aggravating factors, the type dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, other treatment taken, and any other measures used to relieve the claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "In so doing, the Commissioner has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Walters*, 127 F.3d at 531.

Because the ALJ has the opportunity to observe the demeanor and disposition of witnesses during the hearing process, the ALJ is best equipped to evaluate the credibility of witnesses. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007). It is appropriate for the ALJ to discount credibility where the ALJ finds discrepancies between the medical reports, claimant's testimony and other evidence of record. *Walters*, 127 F.3d at 531. When an ALJ decides to discredit a claimant's credibility, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010).

In the instant case, the ALJ properly evaluated Smith's claims of disabling pain pursuant to the two-step process announced by the Sixth Circuit. At the first prong of the analysis, the ALJ found there was sufficient objective evidence of an underlying condition. Plaintiff agrees

9

with the ALJ's determination at this step.  The ALJ also held that Smith's condition could reasonably be expected to cause his alleged pain.  But, the ALJ found Smith's statements regarding the intensity, persistence and limiting effects of his pain were not credible.  Smith challenges this aspect of the ALJ's ruling.

To begin, Smith maintains that because he amended his disability onset date to January 26, 2010, the ALJ erred by relying on medical evidence, or the lack thereof, prior to this time to discredit his allegations of pain *after* this date.  Smith concedes that the medical evidence of record existing prior to January 26, 2010 does not support a finding of disability, but submits that the record post January 2010 supports his request for benefits.

On the other hand, the Commissioner contends that amending the onset date did not prevent the ALJ from considering evidence in the record prior to January 26, 2010.  Rather, the Commissioner points to a number of regulations which acknowledge an adjudicator's duty to consider all the evidence within a claimant's record.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3); 404.953(a), 416.1453(a); and 404.946(a), 416.1446(a).  However, the undersigned is not fully convinced that an ALJ's responsibility to review the entire record necessarily legitimizes the ALJ's reliance upon what may be dated information to discredit the veracity of a claimant's statements years later.

Nevertheless, it is not necessary for the Court to resolve that issue today as the ALJ supplied adequate reasons, stemming from evidence in the record after January 2010, for discounting Smith's allegations of pain after this date.  For example, the ALJ noted that there was a gap in Smith's treatment from 2008 through June 2011.  Thus, Plaintiff failed to receive any treatment for his alleged disabling pain for over a year after his amended onset date.

The ALJ also noted that there was inconsistency in the record regarding the side of Smith's body in which he experienced pain. From a historical perspective, the ALJ noted that since 2001, Smith had consistently complained of pain in his back which spread to his right hip and leg. (*See* Tr. 16). Notably, Plaintiff also chiefly complained of problems with pain in right hip and leg during his consultative examination with Dr. Waldbaum on January 28, 2010 – his amended onset date. (Tr. 335-37). Dr. Waldbaum indicated that Smith used a cane in his right hand and put his entire body weight on that side. Yet, when Smith presented to his doctor in June 2011, his chief complaint was lower back pain with radicular pain in his *left* leg. (Tr. 356). Plaintiff made this same allegation at the hearing, during which he testified that he used the cane in his left hand to relieve the pain on that side of his body. (Tr. 35-36). Therefore, Plaintiff gave his doctors conflicting reports regarding both which side of his body he experienced pain and which hand he used to walk with a cane. Accordingly, this was a valid basis for the ALJ to discount the credibility of Smith's allegations of pain.

It was also appropriate for the ALJ to rely upon Smith's non-compliance with treatment in discounting his allegations. While the ALJ identified instances of non-compliance in the record prior to January 2010, the ALJ also highlighted there were no documents in the record showing that Plaintiff had attended physical therapy sessions which were prescribed for him on June 23, 2011. Plaintiff contends the ALJ should not have used this lack of evidence against him because he claims that at the time of the hearing he had begun to attend physical therapy, but simply was unable to obtain records documenting such by the time of the proceeding.

Ultimately, "[t]he burden of providing a complete medical record rests with the claimant." *Weeks v. Shalala*, No. 94-5948, 1995 WL 521156, at *2 (6th Cir. Sept. 1, 1995) (Table). Furthermore, it is reasonable for an ALJ to presume that a claimant who is represented

11

by counsel has presented his best case for entitlement to benefits. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002) (citing *Sears v. Bowen.*, 840 F.2d 394, 402 (7th Cir. 1988)).  Thus, Smith bore the burden of providing the ALJ with a complete record, and it was fair for the ALJ to presume that he had done so given his representation by counsel.  Although Plaintiff testified that he had begun treatment, it was reasonable for the ALJ to question the veracity of Plaintiff's statement given the lack of any records confirming Plaintiff's allegations.

Although the ALJ provided several adequate reasons for discrediting the severity of Smith's pain, the undersigned agrees that the ALJ probably exceeded her duties when she ruled that Smith's inability to sleep at night was a direct result of him taking a nap in the evening.  An ALJ does not inherently possess medical expertise and may not substitute her judgment for that of a medical professional.  *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006). Consequently, the ALJ should not have discredited Plaintiff's difficulty sleeping at night on this basis.  Nevertheless, the error is harmless because the remaining reasons asserted by the ALJ for discrediting Plaintiff are sufficient to justify the ALJ's ruling.

2.  Medical Opinion Evidence

Federal regulations establish the hierarchy of medical opinion evidence.  At the top of the hierarchy are opinions provided by the claimant's treating source.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Opinions from these sources are entitled to controlling weight so long as the opinion is well-supported by acceptable medical evidence and not inconsistent with the other substantial evidence of record.  *Wilson, 378 F.3d at 544*.  Next in the hierarchy are opinions issued by examining physicians.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Yet, opinions from medical professionals who have only examined the claimant on one occasion are not automatically

12

entitled to any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Finally, the adjudicator must consider the findings of non-examining physicians. 20 C.F.R. §§ 404.1527(e), 416.927(e). Generally, more weight is given to the opinions of examining medical sources than to non-examining medical sources. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). However, the regulations recognize that opinions from non-examining state agency consultants, may be entitled to significant weight, as these individuals are "highly qualified" and are "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see Barker* 40 F.3d at 794.

Smith's final assignment of error challenges the ALJ's decision to assign "little weight" to the opinion of Dr. Waldbaum, the consultative examiner who personally evaluated Smith. Plaintiff contends that instead of accepting Dr. Waldbaum's opinions, the ALJ improperly attributed greater weight to the opinions of the state agency examiner who merely conducted a review of Plaintiff's medical records. Plaintiff claims the ALJ's actions were in violation of the governing regulations, and notes that had the ALJ fully credited Dr. Waldbaum's assessment, the Medical-Vocational guidelines would have directed a finding of disability.

This objection is not well-taken. The ALJ's evaluation of the medical opinion evidence is supported by substantial evidence. The ALJ gave "little weight" to Dr. Waldbaum's opinion explaining that her report was internally inconsistent. The ALJ noted that ironically after Dr. Waldbaum observed Smith had exaggerated pain responses, the physician nonetheless severely restricted Smith's ability to perform work activities.

The record supports the ALJ's assessment of the doctor's conclusions. State agency physician, Dr. Bolz, also questioned the limitations Dr. Waldbaum placed on Smith (i.e. precluding all work which would require standing, walking or climbing). Dr. Bolz opined that

13

neither Dr. Waldbaum's examination of Plaintiff, nor the evidence of record supported these restrictions. Accordingly, he opined that Dr. Waldbaum's opinion was not entitled to great weight.

In addition, contrary to Plaintiff's suggestion, the two physical examinations he underwent following Dr. Waldbaum's evaluation do not corroborate Dr. Waldbaum's conclusions regarding his physical abilities. In April 2010, Smith presented to Dr. Juan Escandon. The doctor examined Plaintiff and noted degenerative changes in his lower lumbar spine. However, he did not completely preclude Smith from work which required sitting, climbing or walking as indicated by Dr. Waldbaum. Instead, Dr. Escandon noted that Smith should avoid "*long* periods of sitting or standing" and should "move around and change [his] position of weight-bearing as much as possible." (Tr. 350) (emphasis added). Obviously, there is a clear difference between a total inability to perform a task – Dr. Waldbaum's perspective, and an acknowledgment of one's ability to perform a task within certain boundaries – Dr. Escandon's perspective.

Nor did Plaintiff's next physical examination demonstrate that he could not perform any work involving standing, climbing or walking. In June 2011, Smith presented to Dr. Constance Magoulias complaining of chronic back pain. While the doctor acknowledged that Plaintiff had a restricted range of motion and tested positive on straight leg raising on the left side, Plaintiff has not shown where the doctor restricted his ability to walk, stand or climb to the extent announced by Dr. Waldbaum. Rather, Dr. Magoulias advised Smith to participate in physical therapy and prescribed him pain injections and medication.

Although Plaintiff disagrees with the ALJ's decision to limit the weight given to Dr. Waldbaum's opinion, the decision has support in the record. As mentioned above, because Dr.

Waldbaum only examined Plaintiff one time, her opinion was not entitled to any special deference. Nor was the ALJ compelled to provide "good reasons" for his decision to assign less than controlling weight to the doctor's findings as such a requirement only applies to the consideration of opinions offered from treating sources. Thus, the statement provided by the ALJ – finding Dr. Waldbaum's opinion internally inconsistent—adequately explained why her conclusions were not deserving of additional weight. On the other hand, it was proper for the ALJ to attribute "some weight" to Dr. Bolz's findings. Dr. Bolz is a state agency reviewer and is considered to be an expert in disability evaluation. He had access to Plaintiff's entire medical record including Dr. Waldbaum's evaluation and possessed the skill to assess whether the physician's opinions were consistent with the record.

Finally, Plaintiff points to various objective findings made by Dr. Waldbaum and other physicians in the record which Plaintiff claims the ALJ overlooked, but the ALJ was under no obligation to mention every piece of evidence presented to her in order to demonstrate that such evidence was considered. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). Despite whatever commonality exists between their objective findings, no other physician recommended restrictions on Smith's work activity as severe as Dr. Waldbaum. Thus, the similarities of the doctors' findings are of little significance, and are insufficient to reverse the ALJ's ruling.

VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: February 21, 2013.